**MALAETIA F. TUFELE of Leloaloa, Plaintiff**

v.

**PAPA VELEGA and PA'ULAAU, Defendants**

No. 21-1956

High Court of American Samoa

Civil Jurisdiction, Trial Division

November 9, 1956

Heard at Fagatogo on October 9, 1956 before MORROW, *Chief Judge* and MALEPEAI and LETULIGASENOA, *Associate Judges.*

Malaetia F. Tufele *pro se.*

Papa Velega, counsel *pro se* and Pa'ulaau.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Plaintiff Malaetia F. Tufele filed his petition seeking an order restraining defendants "from planting plantations on the land now located in Ofu, Manu'a District, which land were my jurisdiction and my possession."

At the hearing it appeared that this is a dispute between certain members of the Velega Family of Ofu. Malaetia claims that he and Vagatai, an adopted member of the Family, cleared certain land from the virgin bush on the Island of Ofu, and that it became their individually owned property, and not the communal land of the Velega title. He also claims that Pa'ulaau, another member of the Family, with the permission and upon the authorization of Papa Velega, the matai of the Family, has been putting in plantations on this land.

Defendant Papa Velega, the matai, claims that the land involved in the dispute is the communal family land of the Velega Family. Also that when a dispute arose between Vagatai and Pa'ulaau over Vagatai's claim that Pa'ulaau was putting in plantations on it, he (Papa Velega), in his capacity as matai and to keep the peace, ordered both of them to stay off the land.

The first question for our determination is whether the land involved is the individually owned land of Malaetia Vagatai or the communal family land of the Velega title. To support his claim of individual ownership, Malaetia testified that beginning in 1949 he and Vagatai cleared the

land from the virgin bush and that the clearing was done without the authorization of Velega Talafili, the then holder of the Velega title. Talafili was the blood father of Papa, the present Velega. Papa Velega testified in part as follows:

"Q   Are you familiar with the land about which the dispute is?
A   Yes.
Q   Do you know who first cut down the big trees on it?
A   Former holders of titles Velega and some members of that family that are dead.
Q   Well, now are you telling us that Mike and Vagatai did not cut down the big trees originally?
A   You mean the beginning of the cutting of big trees on the land?
Q   When the big trees on the land was first cut, that's the very first time, who cut them?
A   Former holders of Velega and other members of the family.
Q   Now, are you telling us that Mike and Vagatai did not cut the original big trees when they were cut?
A   That is true.
Q   Well, now did Mike and Vagatai cut any big trees on the land beginning about 1949?
A   Yes.
Q   Were there plantations on this land before 1949?
A   Yes.
Q   What were they?
A   Taros, coconuts and some of. them still standing and some died of the bushes.
Q   Well, you know who had taro patches on it before 1949?
A   Teleuli one of the members of the Velega Family.
Q   You know when he had plantations on it?
A   I was young at that time when I and my father were working on this land about 1937 or 1938."

We think the weight of the evidence is clearly to the effect that the land, while some virgin timber might have been left standing on it, had been used by various members of the Velega Family for plantation purposes to some extent long before 1949, when the plaintiff claims that he and

Vagatai began to clear it. Also we believe from the evidence that much of the so-called virgin bush was second growth timber. Papa Velega further testified:

"Q  When Malaetia and Vagatai went on the land to cut down trees, did they do it on their own authority or somebody else's authority if you know?

A  Sure thing that they asked permission and the land Velega gave them. Vagatai asked permission that he wants a place to plant his plantation, taro patch, Velega gave him one and also Tupuola asked him permission he wants a place to plant his taro patch then the Velega gave him.

Q  Well, did Mike have a taro patch on there, too?

A  He worked there with Vagatai on their assigned piece.

Q  Who assigned them a piece?

A  Velega Talafili.

. . .

. . .

Q  Were the big trees cut down under the authority of the old Velega, that's your father, when he was the Velega?

A  Yes.

Q  Had they cleared land to the left of that long before 1949?

A  Yes.

Q  Had they cleared any land above it before 1949?

A  Yes, they keep on working up to the bush."

All of the judges are convinced from the evidence as a whole that the land is the communal property of the Velega Family through first occupancy by Velega Family members accompanied by a claim of ownership by the Family and that the land was assigned to Vagatai and Malaetia by Velega Talafili as members of the Family in accordance with Samoan customs.

We think it quite clear that Vagatai and Pa'ulaau have not abided by the order of Papa Velega, their matai, to stop going on the land. Malaetia's own testimony indicates that this is true.

It is also clear to us that Malaetia and Vagatai are using the land in dispute upon the authority of Velega Talafili

and that Pa'ulaau is using Velega land adjoining it under like authority. The real difficulty in this case is that there is disagreement between Malaetia and Vagatai on the one hand and Pa'ulaau on the other as to the location of the boundary line between the communal land assigned to Malaetia and Vagatai and the adjoining communal land assigned to Pa'ulaau.

Under Samoan customs the matai has the authority to assign communal land to family members. When a dispute arises over what land has been assigned to this member and what to that member, it is his duty to settle it by ascertaining the true boundary line and pointing it out to the disputants. This Papa Velega has not done. He refused to shoulder the responsibility and instead told the parties to the dispute not to go on the land. That was several months ago. It is time now for Papa Velega to perform his duty as the matai and settle this dispute by determining where the boundary line is. After the boundary line has been determined by the matai, Malaetia and Vagatai should stay on their side of the line and Pa'ulaau should stay on his side.

There was no reliable evidence before us as to the location of the true boundary line. Hence, we cannot make an order respecting it. In view of this fact and the further fact that we find that the land involved is communal land of the Velega title and not the individually owned land of the plaintiff as claimed by him, we must dismiss the plaintiff's petition.

Under the circumstances of this case, we think that it is only just that the matai bear half the costs.

### ORDER

Accordingly it is hereby ORDERED that the petition of plaintiff Malaetia F. Tufele be and the same is hereby dismissed.

Costs in the sum of $12.50 are hereby assessed against Malaetia F. Tufele and Papa Velega, each to pay $6.25. Costs are to be paid within 30 days.

Papa Velega, the matai, should determine the true boundary line between the land assigned to Malaetia and Vagatai and the adjoining land assigned to Pa'ulaau; then show these members of the Velega Family where it is. Malaetia and Vagatai should then stay on their side of the line and Pa'ulaau on his side.